<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SAMAN KHOURY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:12-6695-SDW-SCM |
| v. | : | |
| | : | |
| JOHN M. McHUGH, Secretary of the Army, | : | **OPINION** |
| | : | |
| Defendant, | : | |
| | : | January 26, 2016 |
| | : | |

**WIGENTON**, District Judge.

Before this Court is Defendant John M. McHugh's ("Defendant" or the "Army") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 and the Rehabilitation Act, 29 U.S.C. sec. 791, *et seq.* ("Rehab Act"). Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court **GRANTS** Defendant's Motion for Summary Judgment.

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

**I.**     ***Employment and injuries***

Saman Khoury ("Plaintiff" or "Khoury") is a former engineer at the U.S. Army Research Development and Engineering Command ("ARDEC") at Picatinny Arsenal, New Jersey ("Picatinny"). (SMF ¶ 1.) Beginning in March 2006, Plaintiff's first-level supervisor was Joe

Mokay, his second-level supervisor was Jeff Dyer, and his third-level supervisor was Pat Serao. (*Id.* at ¶ 2; Resp. to SMF ¶ 2.)  At the time of his removal, James Zoll was Plaintiff's first-level supervisor, Dyer was his second-level supervisor and Kevin Hayes was his third-level supervisor. (SMF ¶ 2.)  Plaintiff was a salaried employee who worked pursuant to a Collective Bargaining Agreement ("CBA").  (SMF ¶ 3.)

In 1994 and 1996, Plaintiff experienced three separate motor vehicle accidents, which led to knee, back and neck injuries.  (SMF ¶ 4.)  As a result of the 1996 work-related car accident, Plaintiff was out of work for some time; however, effective January 7, 1998, the Department of Labor ("DOL") terminated Plaintiff's worker's compensation benefits.  (SMF ¶ 5.)  An independent medical examiner who evaluated Plaintiff "found no objective evidence to correspond with his subjective complaints" and concluded that Plaintiff had full range of motion in his neck and left back.  (*Id.*)  Plaintiff was released to work full time with limitations on heavy lifting and squatting, although Plaintiff .  (*Id.* at ¶ 6.)  Plaintiff was periodically required to travel for work. (*See id.* at ¶¶ 9, 25.)

From 1998 to 2006, Plaintiff's orthopedist placed the following limitations on him: no heavy lifting and no kneeling.  (*Id.* at ¶ 7.)  In March 2006, Plaintiff's orthopedist, Dr. Robert Petrucelli, recommended that Plaintiff fly first-class in order to stretch his legs approximately every hour.  (*Id.* at ¶ 8; Resp. to SMF ¶8.)  No limitations were placed on the number of hours that Plaintiff could travel, and Plaintiff was allowed to work 8 hours per day.  (SMF ¶ 9; Resp. to SMF ¶ 9.)  Soon after the April 21, 2006 train ride to Rock Island, Illinois for work, Plaintiff's new orthopedist, Dr. David Basch, released Plaintiff to work without restriction in May 2006. (SMF ¶ 9; Resp. to SMF ¶ 9.)  In July 2006, Dr. Basch indicated that Plaintiff should fly first-class to allow

for extra legroom, avoid traveling by train and kneeling, and that Plaintiff could work up to 8 hours per day.  (SMF ¶ 10; Resp. to SMF ¶ 10.)

## II.   *Complaint, Settlement Agreement and Rock Island trip*

In February 2004, Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint against the Army, alleging disability discrimination, failure to reasonably accommodate, and denial of certain advancement opportunities.  (SMF ¶ 13.)  On March 23, 2005, the parties freely executed a negotiated settlement agreement ("NSA") resolving all of Plaintiff's complaints.  (*Id.* at ¶¶ 14–15.)  During the process, Plaintiff was represented by counsel.  (*Id.* at ¶ 15.)

The NSA provides that, "subject to approval by higher headquarters," management agrees to provide first-class air "as permitted in the Joint Travel Regulations" when air travel is required. (*Id.* at ¶ 16.)

In March 2006, Plaintiff requested to travel by first-class air when he learned that he would need to travel to Rock Island, Illinois for work in April 2006.  (SMF at ¶¶ 17–18.)  Instead, on March 26, 2006, Dyer approved coach air through Detroit, Michigan to Moline, Illinois.  (*See id.*) Pursuant to the NSA, Plaintiff submitted documentation from his doctor, Dr. Petrucelli, who in 2002 recommended that Plaintiff be permitted to "get up and walk around after sitting for approximately one hour" if sitting in a "very cramped position."  (*Id.* at ¶ 19.)

After the NSA was signed, Plaintiff and Dyer generally agreed to long distance travel that did not include first-class air.  (SMF ¶ 25.)  Regarding the Rock Island trip, Dyer and Plaintiff explored using a video conference line and taking a shorter coach flight to Detroit.  (*Id.* at ¶ 28.) After refusing to travel coach to Detroit, Plaintiff went to the EEO Office requesting first-class air pursuant to the NSA.  (*Id.* at ¶ 31.)  Dyer authorized a sleeper car on a train to allow Plaintiff to stretch during the trip.  (*Id.* at ¶ 32.)  Carol Neumann, who was employed by the EEO office,

researched train costs and determined that the overnight train leaving from Newark and arriving in Chicago was more economical than flying first-class air.  (*Id.* at ¶ 33.)

On April 19, 2006, the day after management approved the train with a sleeper car upgrade, Plaintiff booked his own train tickets.  (*Id.* at ¶ 39.)  He booked an Amtrak Acela train to Washington D.C., departing on Friday, April 21, 2006, at 8:15 AM and arriving in D.C. at 10:49 AM.  (*Id.* at ¶ 40.)  He then booked himself a Family Bedroom Car leaving from D.C. on Saturday afternoon and arriving in Chicago on Sunday.  (*Id.*)  Through the federal government's travel agency, Plaintiff booked a coach flight from Chicago to Moline, Illinois on Monday morning, and a rental car to travel to Rock Island.  (*Id.*)  He booked a similar trip back to New Jersey. (*Id.*) Management authorized the request.  (*Id.* at ¶ 41.)  Plaintiff did not have any back pain on the Acela ride to D.C.  (*Id.* at ¶ 45.)  On Monday, Plaintiff traveled to Rock Island by car to attend the meeting.  (*Id.* at ¶ 47.)  After checking into his hotel room in Chicago on the return trip, Plaintiff walked to the emergency room because he was experiencing back pain, which was diagnosed as a back sprain.  (*Id.* at ¶ 48.)  After being discharged from the ER, Plaintiff decided to book a first-class ticket back to Newark, New Jersey and attempted to obtain approval from management. (SMF ¶¶ 49-50; Resp. to SMF ¶¶ 49-50.)  Plaintiff did not receive permission to fly first-class before booking his tickets.  (*Id.*)

### III.    *Travel reimbursement and suspension*

After Plaintiff returned from Rock Island, he submitted a voucher for reimbursement of travel expenses during his trip.  (SMF ¶ 51.)  It is at this time that Dyer first learned Plaintiff traveled through D.C. and booked himself first-class tickets home.  (*Id.* at ¶ 52.)  Because Dyer had questions regarding Plaintiff's itinerary and missing receipts, Plaintiff submitted a revised reimbursement request on June 1, 2006.  (*Id.* at ¶¶ 53–54.)  As the approving official for Plaintiff's

trip, Dyer reviewed the June 1 voucher for reasonableness and compliance.  (*Id.* at ¶ 55.)  Dyer expressed concern regarding the lack of receipts for Plaintiff's claimed taxi fares in D.C. between Union Station and his hotel, as well as the first-class air travel.  (*Id.* at ¶ 56.)  Based on his familiarity with D.C.'s zone system for taxis, Dyer estimated the taxi fare should have been below $10.00 as opposed to the $45.00 claimed fare.  (*Id.*)  Despite being asked, Plaintiff did not provide Dyer with the taxi fare receipts.  (*Id.*)  As a result, Dyer requested that Allen Johannesen, an Army Program Analyst with over 40 years of experience handling travel claims, assist him in determining what claims should be paid.  (*Id.* at ¶ 57.)  On June 22, 2006, Dyer denied some of Plaintiff's travel expenses, including claims for certain taxi and hotel expenses, because Plaintiff took a circuitous route and because the claim for taxi fare in Washington seemed unreasonable.  (*Id.* at ¶¶ 59–60.)  Dyer also denied the claim for first-class airfare from Chicago to New Jersey because Plaintiff failed to request and/or receive authorization for the first-class travel.  (*Id.* at ¶ 61.)  Johannesen concluded that the travel voucher as modified was properly computed and paid.  (*Id.* at ¶ 62.)

On August 16, 2006, Dyer proposed suspending Plaintiff for submitting fraudulent taxi fare claims.  (*Id.* at ¶ 63.)  However, Plaintiff argues that the proposed suspension was issued in retaliation for Plaintiff's EEO activity.  (Resp. to SMF ¶ 63.)  Dyer also proposed suspending Plaintiff for improperly entering his compensatory travel time request.  (SMF ¶ 64.)  Based on additional information submitted by Plaintiff in response to the proposed suspension, Pat Serao, the deciding official, did not uphold the latter part of the suspension, but upheld a five-day suspension for travel fraud.  (*Id.* at ¶¶ 64–65.)  In October 2006, Plaintiff filed a union grievance regarding the suspension, which was investigated and upheld by three different management officials.  (*Id.* at ¶¶ 66–67.)

**IV.**     ***Worker's compensation and removal***

After the train ride, Plaintiff worked full time until a spontaneous recurrence of back pain in March 2007, which caused him to be out of work until April 2007.  (*Id.* at ¶¶ 68–69.)  Plaintiff attributed his spontaneous recurrence of pain to the 2006 train ride, and he filed a worker's compensation claim for his medical bills and his time out of work.  (*Id.* at ¶ 70.)  Dyer made two separate comments on Plaintiff's worker's compensation form in order to address inaccuracies that Plaintiff included on the form.  (*Id.* at ¶¶ 72–73.)  Plaintiff ultimately received full worker's compensation benefits to cover his absence from work and his medical bills arising from the March 2007 recurrence. (*Id.* at ¶ 74.)

To determine whether Plaintiff was eligible for worker's compensation for the 2007 recurrence, the DOL sent Plaintiff to receive an independent medical examination ("IME") in October 2008.  (*Id.* at ¶ 75.)  Plaintiff avers that the physician committed medical malpractice during the IME and permanently injured his back.  (*Id.* at ¶ 76.)  Since the IME, with the exception of mid-May 2009 to mid-June 2009, when Plaintiff worked four hours per day on two days per week, the Army alleges Plaintiff has been unable to perform the essential functions of his job, with or without a reasonable accommodation.  (*Id.* at ¶ 77.)  However, Plaintiff maintains that the Army failed to engage in the interactive process necessary to determine whether a reasonable accommodation would have allowed Plaintiff to return to work.  (Resp. to SMF ¶ 77.)

On February 2, 2012, Zoll recommended Plaintiff's removal from federal service based on medical records from Dr. Basch, Plaintiff's orthopedist, who found that Plaintiff was permanently unable to return to work in any capacity and that he could not sit, stand, or walk for more than 15 minutes without severe pain.  (Resp. to SMF ¶¶ 78–79.)  Prior to Plaintiff's removal, Zoll requested that Plaintiff and his physician identify any accommodation that would allow him to perform the essential functions of his job, and Plaintiff and Plaintiff's doctors failed to provide such

information.  (*See id.* at ¶¶ 80–81.)  On March 21, 2012, Dr. Basch concluded that Plaintiff was "completely disabled."  (SMF ¶ 81.)

On July 9, 2012, Hayes sent a letter to Plaintiff removing him from federal office effective July 14, 2012.  (SMF ¶ 82.)  At Plaintiff's request, Dyer was removed as the deciding official.  (*Id.* at ¶ 83.)  Hayes found that Defendant's reasons for the proposed removal were valid and that removal was warranted to promote the efficiency of federal service.  (*Id.* at ¶ 84.)

Plaintiff and Defendant dispute when Plaintiff first contacted EEO.  (*See id.* at ¶ 92.) Subsequent to his meeting with EEO on August 15, 2006, Plaintiff filed a letter with EEO Complaints and Complaints Review ("EEOCCR") alleging that the Army breached the 2005 NSA by directing him to travel via train and that Dyer discriminated against him by "reconstructing" his travel voucher and requesting additional documentation for the taxi fares.  (SMF ¶ 93.)  On September 15, 2006, EEOCCR dismissed Plaintiff's claim that the Army breached the 2005 NSA as untimely.  (*Id.* at ¶ 94.)  On appeal, EEOC Office of Federal Operations ("EEOC OFO") upheld EEOCCR's decision with respect to Plaintiff's breach claim.  (*Id.* at ¶ 95.)  However, it also determined that Plaintiff could pursue the new allegations of discrimination stemming from the Rock Island trip.  (*Id.*)  EEOCCR directed Plaintiff to contact an EEO Officer within 15 days regarding these additional claims of discrimination.  (*Id.* at ¶ 96.)  Contrary to Plaintiff's contentions, the Army submits that Plaintiff failed to make contact within the 15 days.  (*See id.* at ¶ 97.)

An EEO scheduling order showing that Plaintiff was litigating his EEO Complaint was mailed on January 26, 2012 and Defendant proposed terminating Plaintiff on February 2, 2012. (*See* Pl.'s Opp. 54.)  On August 21, 2012, Plaintiff filed an additional EEO Complaint regarding his removal from federal service.  (*Id.* at ¶ 98.)

On October 23, 2012, Plaintiff filed a complaint in this Court, which was later amended, alleging, pursuant to the Rehab Act: (1) refusal to grant a reasonable accommodation (Count I), (2) disability discrimination (Count II), (3) retaliation (Count III), and (4) hostile work environment (Count IV)[1]. (Dkt. No. 1.)  After the conclusion of discovery, Defendant filed the present motion for summary judgment, which is opposed by Plaintiff.  (Dkt. No. 48, 54.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts

---

[1] Plaintiff is withdrawing his hostile work environment claim.  (Pl.'s Opp. 6.)  Plaintiff also concedes that he has no disability discrimination claim with respect to his termination, no claim regarding the debt owed to DFAS, and no claim regarding actions that occurred prior to the 2005 NSA.  (Pl.'s Opp.)

showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. App'x. 548, 554 (3d Cir. 2002).

## **DISCUSSION**

### I. *Reasonable accommodation: April 2006 train ride*

Plaintiff argues that the Army failed to grant him a reasonable accommodation in violation of the Rehab Act when it denied his request to fly first-class between Newark and Chicago on his

way to Rock Island for work and, instead, required Plaintiff to travel by train.  (Compl. ¶¶ 50, 53.)  Plaintiff claims that the train ride and subsequent IME led to his permanent disability.  (Compl. ¶ 50.)  Plaintiff further alleges that the Army refused to reasonably accommodate him by denying reimbursement for taxi and first-class airfare costs incurred on the Rock Island trip.  (*Id.*)

Because (1) Plaintiff failed to timely exhaust his administrative remedies, (2) Plaintiff did not prove that he was disabled pursuant to the Rehab Act, and (3) the Army granted Plaintiff a reasonable accommodation, summary judgment will be granted in favor of the Army.

### a.  *Failure to exhaust administrative remedies*

A federal employee must timely exhaust administrative remedies before alleging a Rehab Act claim in federal court.  *Smith v. Pallman*, 420 F. App'x 208, 212–13 (3d Cir. 2011).  The employee must "initiate contact with an EEO Counselor within forty-five days of the alleged discriminatory action."  *Simon v. Potter*, No. 04-3752, 2006 WL 3486108, at *3 (D.N.J. Nov. 30, 2006) (citing 29 C.F.R. § 1614.105(a)(1)).  The EEOC has held that the plaintiff may "initiate contact" by contacting someone "logically connected with the EEO process . . . and by exhibiting an intent to begin the EEO process."  *E.E.O.C. Management Directive* 110, at ch. 2, n.1, *available at*  http://www.eeoc.gov/federal/directives/md110/chapter2.html  (last  visited  Jan.  18,  2016).  Moreover, the employee is also required to raise his claims in an EEO complaint.  *Haines v. Administrator, U.S. Fed'l Transit Admin.*, 579 F. App'x. 63, 65 (3d Cir. 2014).  Although the EEO complaint need not be "an exact correspondence between the face of the EEOC charge and the district court complaint," it must fall within the scope of plaintiff's EEO complaint.  *Brown v. Norton*, No. 02-5556, 2008 WL 2228704, at *4 (D.N.J. May 28, 2008).

In his opposition, Plaintiff contends that he timely exhausted his administrative remedies because he "initiated" contact regarding the train ride on April 3, 2006, and he continued to contact

EEO on May 31, 2006, which fall within 45 days of when Plaintiff purchased his train tickets on April 19, 2006. (Pl.'s Opp. 8–13.)  The record shows that on April 3, 2006, Plaintiff did not exhibit "an intent to begin the EEO process" regarding a failure-to-accommodate claim.  Rather, Plaintiff merely sought guidance regarding the NSA "since the NSA and its enforcement is under EEO's authority." (Pl.'s Opp, Ex. 33 at 1272; Ex. 35).  In addition, there is no evidence to support Plaintiff's contention that he met with McCloud at EEO on May 31, 2006, as documents reflect that Plaintiff met with McCloud on July 7, 2006, after the 45-day window.  (Def.'s Br., Ex. 66.)  Even assuming that Plaintiff met with McCloud on May 31, 2006, Plaintiff did not raise a reasonable accommodation claim with McCloud.  Instead, Plaintiff took issue with Dyer's request for additional documentation concerning the Rock Island trip.  (*Id.*, Ex. 46; Ex. 79, at 6:22–9:24.)  Because Plaintiff did not initiate contact with EEO concerning a reasonable accommodation claim within 45 days, this Court finds that Plaintiff failed to timely exhaust his administrative remedies.

      **b.  *Failure to accommodate claim***

Even assuming, *arguendo*, that Plaintiff timely initiated contact with EEO, his failure to accommodate claim does not withstand summary judgment.  The Rehab Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement or advancement."  *Wishkin v. Potter*, 476 F.3d 180, 184–85 (3d Cir. 2007) (citation omitted).  A plaintiff alleging a failure-to-accommodate claim must show: (1) he was disabled and his employer had notice of the disability; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist in seeking accommodations; and (4) he could have been reasonably accommodated.  *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330–31 (3d Cir. 2003) (citation omitted).

      **i.  *Disability***

Under the Rehab Act, a plaintiff must prove that he is an "individual with a disability," which is someone who: (1) has a physical or mental impairment that substantially limits his major life activities, (2) has a history of such an impairment, or (3) is regarded as having such an impairment.[2] 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1); *see Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  To determine whether an impairment substantially limits a major life activity, courts first "determine whether the individual is substantially limited in any major life activity other than working" and, if so, "the inquiry ends there." *Mondzelewski v. Pathmark Stores*, 162 F.3d 778, 783–84 (3d Cir. 1998).  Second, "[i]f the individual is not so limited, the court's next step is to determine whether the individual is substantially limited in the major life activity of working." *Id.* at 784.

Based on the evidence, Plaintiff was not substantially limited in a major life activity before the April 2006 train ride.  Prior to this action, Plaintiff claimed that before the train ride, he was limited in his ability to kneel, squat, lift heavy objects, and needed to stretch his legs every hour. (SMF ¶¶ 7–8.)  During his EEO testimony, Plaintiff stated that between 1996 and the 2006 train ride, he was limited with respect to kneeling, climbing, and squatting.  (Def.'s, Br., Ex. 2 at 14:5–24.)  Further, it is undisputed that in May 2006, after the train ride, Dr. Basch released Plaintiff to work without any restrictions.  (*See* SMF ¶ 10).

---

[2] Major life activities include "functions such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).  A "substantial limitation" means that the plaintiff cannot perform a major life activity that the average person can perform or is significantly restricted in performing a major life activity as compared to the average person.  29 C.F.R. § 1630.2(j). To determine whether an impairment substantially limits a major life activity, courts consider the nature, severity, duration, and the long-term impact of the impairment.  *Mondzelewski*, 162 F.3d at 783.

The ability to squat and climb are not considered substantial limitations of major life activities under the pre-2008 amendments to the ADA.[3]  *See Mastrolia v. Potter*, No 08-5967, 2010 WL 1752531, at *7 (D.N.J. Apr. 27, 2010).  Although the ability to lift and sit may limit major life activities under certain circumstances, Plaintiff was not substantially limited in these areas.  As to lifting, Plaintiff's limitation was only with respect to "heavy" lifting, and, therefore, was not "substantial."  *See Marinelli v. City of Erie*, 216 F.3d 354, 364 (3d Cir. 2000).  As to sitting, Plaintiff was limited in his ability to sit in cramped spaces while traveling, which does not constitute a substantial limitation.  *Steinke v. SEPTA*, 85 F. App'x 808, 810–811 (3d Cir. 2003); *Cade v. Consolidated Rail Corp*., No. 98-5941, 2002 WL 922150, *9 (E.D. Pa. May 7, 2002).  With respect to walking, the Third Circuit has held that needing a break after fifty minutes does not constitute a substantial limitation of a major life activity, which is similar to Plaintiff need to take a break after sitting for one hour.  *See Taylor v. Pathmark, Inc.*, 177 F.3d 180, 186 (3d Cir. 1999).  Therefore, this Court finds that Plaintiff's limitation with respect to sitting is not substantial.

In his current opposition, Plaintiff submits self-serving testimony to allege additional limitations regarding sleeping, standing, sexual function, and/or caring for himself.  (Pl.'s Opp. 22–28.)[4]  Plaintiff's medical records do not indicate that he was limited with respect to these limitations.  (*See* SMF ¶¶ 7–8.)  Furthermore, such self-serving allegations do not defeat a motion for summary judgment.  *Irving v. Chester Water Auth*., 439 Fed. App'x 125, 127 (3d Cir. 2011);

---

[3] Although the ADA amendments of 2008 expand the definition of disability, they do not apply to the claims arising from the 2006 train ride because the amendments do not apply retroactively.  *See Britting v. Sec'y, Dep't of Veterans Affairs*, 409 F. App'x 566, 569 (3d Cir. 2011).

[4] Except for his limitation with respect to sitting, Plaintiff does not provide the dates, times or any other specifics of his alleged additional limitations.

*Jordan v. Cicchi*, No. 10-4398, 2014 WL 2009089, at *2 (D.N.J. May 16, 2014).  In sum, Plaintiff

has not proven that he was substantially limited in these activities, nor that he was disabled under

the Rehab Act.[5]   Therefore, Defendant is entitled to summary judgment on its failure to

accommodate claim regarding the 2006 train ride.

### ii.   *Reasonable accommodation*

Even assuming that Plaintiff timely raised his failure-to-accommodate claim and was

disabled under the Rehab Act, this Court finds that the Army provided Plaintiff with a reasonable

accommodation.   As an initial matter, an employee is not entitled to an accommodation of his

choice, as the employer "has the ultimate discretion to choose between effective accommodations,

and may choose the less expensive accommodation or the accommodation that is easier for it to

provide."  29 C.F.R. § 1630.9(d), App. § 1630.9(a); *Yovtcheva v. City of Phila. Water Dep't*, 518

Fed. App'x. 116, 122 (3d Cir. 2013).

Here, Defendant conducted research which showed that train travel was less expensive than

first-class air.  (SMF ¶ 33.)  As a result, Defendant authorized a sleeper car train that reasonably

accommodated Plaintiff's known limitation of needing to stretch his legs once per hour.  (*See* SMF

¶ 8.)  While Plaintiff notes that Dr. Petrucelli and Dr. Bilello recommended first-class air, this

recommendation was based on Plaintiff's need to "stretch and move around more freely." (SMF ¶

---

[5] Likewise, the record is devoid of evidence that Plaintiff had a history of, or was regarded as having, a substantial impairment.  Although the USDOL Decision and Order indicates that Plaintiff had a preexisting back and cervical condition, there was no "objective evidence supporting any permanent injury to [Plaintiff's] lumbar and cervical spine" and Plaintiff had "full range of motion in his neck and back."  (Def.'s Br., Ex. 6.)  Additional medical records indicate that Plaintiff did not have "any neurological deficits nor does he have any orthopaedic deficits as far as objective findings to correspond with his subjective complaints."  (*Id.*, Ex. 7.)  Further, Plaintiff was not regarded as having a disability, as Plaintiff regularly participated in Defendant's meetings, and spent a substantial part of his day at his desk, all which required that Plaintiff sit and/or stand.  (*See* Pl.'s Opp., Ex. 164.)

20).  Indeed, train travel allowed Plaintiff to stretch as needed and there is no evidence that this accommodation was unreasonable.[6]

Alternatively, Plaintiff argues that the Army failed to reasonably accommodate him because it failed to engage in the interactive process in good faith.  "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: '1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'"  *Williams v. Phila. Hous. Auth. Police Dept.*, 380 F.3d 751, 772 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir.1999)).

Although Plaintiff contends that the Army did not make a good faith effort to accommodate him, the record shows that the opposite is true.  It is undisputed that Dyer suggested that Plaintiff take a coach flight to Detroit to allow Plaintiff to stretch his legs.  (SMF ¶ 28).  When Plaintiff disagreed with the suggestion and requested EEO's guidance, negotiations continued without interference from Dyer and Plaintiff resorted to purchasing his own train tickets to Rock Island. (SMF ¶ 31).  Therefore, this Court finds that the Army engaged in the interactive process in order to provide Plaintiff with a reasonable accommodation.

## II.   *Reasonable accommodation: Plaintiff's termination*

---

[6] Plaintiff's claim that the train was unreasonable because the "harmful effects" of "whole body vibrations" injured him, is to no avail.  Defendant is only required to provide a reasonable accommodation for known limitations, such as Plaintiff's need to stretch his legs, not for an injury/ limitation discovered after the accommodation is in place. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999).

In his opposition, Plaintiff argues that the Army failed to grant him a reasonable accommodation in violation of the Rehab Act with respect to his termination.[7]  Plaintiff alleges that the Army did not engage in the interactive process in good faith and that he could have been reasonably accommodated to perform the essential duties of his job.

The Third Circuit has held that an employer can "show [its] good faith in a number of ways," including "request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered the employee's request."  *Taylor*, 184 F.3d at 317.  Participation in the interactive process is the obligation of both parties, and an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals.  *See Taylor*, 184 F.3d at 312.  On February 27, 2012, Zoll, Plaintiff's supervisor, sent Plaintiff a letter requesting that he or his physician provide "[a]n explanation of the impact of the medical condition on overall health and activities, including work" and information regarding any accommodation that would allow Plaintiff to perform his essential job duties.  (SMF ¶ 80).  In response, Dr. Basch responded that Plaintiff was "completely disabled" and did not identify any potential accommodations.  (SMF ¶ 81.)  This demonstrates that the Army participated in the interactive process in good faith and attempted to identify a reasonable accommodation for Plaintiff.  To date, Plaintiff has failed to identify a reasonable accommodation.  *See Castellini v. Bucks County Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009) ("[I]f, after an opportunity for discovery, the employee still has not identified a position into which [he] could have transferred, the court must

---

[7] This claim is not set forth in Plaintiff's Amended Complaint or his responses to interrogatories, which constitutes sufficient grounds for its dismissal.  (*See* Am. Compl. Count I; Def.'s Reply, Ex. 80.)

grant summary judgment in favor of the defendant."). Accordingly, Defendant is entitled to summary judgment on this claim.

**III.** *Disability discrimination*

Plaintiff argues that the Army discriminated against him because of his disability by requiring that he travel to Rock Island by train, requesting receipts for taxi fares below $75.00, "reconstructing" his voucher and denying claims for travel expenses, suspending him for submitting fraudulent expense claims for the 2006 Rock Island trip, making allegedly false statements to the DOL, and removing him from federal service. (Am. Compl. ¶ 53.)

In analyzing a disability discrimination claim, the burden-shifting framework set forth in *McDonnell Douglas*[8] applies. *Lanza v. Postmaster Gen. of the United States*, 570 F. App'x 236, 240 (3d Cir. 2014) (citing *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) and finding *McDonnell Douglas* framework should apply to discrimination claims under the Rehab Act). As such, to establish a prima facie claim of discrimination under the Rehab Act, a plaintiff must show that: (1) he has a disability; (2) he is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer"; and (3) he suffered an adverse employment action because of his disability. *Lanza*, 570 F. App'x at 240. If the plaintiff meets this burden, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employment action." *Wishkin*, 476 F.3d at 185. If the employer satisfies this burden, any presumption of discrimination is rebutted and the burden shifts back to the plaintiff to show that the defendant's reason was pretextual. *Wishkin*, 476 F.3d at 185.

---

[8] *McDonnell Douglas* v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

First, Plaintiff cannot satisfy his initial burden of establishing a prima facie disability discrimination case because, as discussed above, Plaintiff has not proven that he was disabled prior to the October 2008 IME.

Second, to establish a disability discrimination claim under the Rehab Act, the plaintiff must be qualified to perform the essential duties of the job, with or without a reasonable accommodation. *See Miller v. Univ. of Pittsburgh Med. Ctr.*, 350 F. App'x 727, 728–729 (3d Cir. 2009); 42 U.S.C. § 12111(8). Here, Plaintiff had not reported for duty for approximately three years when the Army proposed to terminate him. In response to Plaintiff's proposed removal, Plaintiff's physician, Dr. Basch, concluded that Plaintiff was "completely disabled." (SMF ¶ 81.) Moreover, neither Dr. Basch nor Plaintiff could identify a reasonable accommodation that would allow Plaintiff to perform his duties. (*See id.*) Thus, Plaintiff was unqualified to perform the essential functions of his position, with or without a reasonable accommodation.

Third, the Supreme Court has held that an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . [and] in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998). Dyer's request for taxi cab receipts was reasonable in light of Dyer's knowledge of the D.C. taxi fare system and thus did not constitute an adverse action. Similarly, Dyer properly denied reimbursement for certain aspects of the Rock Island trip in light of the fact that Plaintiff took a circuitous route by traveling through D.C. (*See* SMF ¶¶ 57–62.) Dyer consulted Johannesen, who had over forty years of experience handling travel claims, to ensure compliance with the applicable regulations. (*Id.*) Likewise, the Army's authorization of a sleeper car train for Plaintiff's travel given Plaintiff's need to stretch his legs was not an adverse action.

*Harley v. Geithner*, No. 07-3559, 2010 WL 3906642, at \*12–13 (D.N.J. Sept. 29, 2010).   In addition, Plaintiff's claim that Dyer's comments on the DOL form constituted an adverse action is to no avail, as Plaintiff was fully compensated for his absence from work and his medical bills. Therefore, Plaintiff has not established a prima facie case of disability discrimination.[9]

Hence, this Court grants summary judgment to Defendant on this count because even when construing the facts in the light most favorable to Plaintiff, there is not sufficient evidence from which a trier of fact could reasonably conclude that Plaintiff met his burden of showing disability discrimination.

## IV.    *Retaliation*

Plaintiff argues that Defendant retaliated against him for the following alleged "protected activity": filing the 2004 EEO complaint; executing the 2005 NSA; requesting first-class air pursuant to the 2005 NSA; alleging breach of contract with respect to the 2005 NSA; and filing the 2007 EEO complaint.  (Am. Compl., ¶¶ 57–59.)  Plaintiff contends that because he engaged in these protected activities, the Army retaliated in the following ways: (1) required him to travel by train in April 2006; (2) denied his travel reimbursement requests; (3) suspended him; (4) included negative comments on the DOL form; and (5) terminated him.

To establish a prima facie case of discrimination, a plaintiff must show: (1) he engaged in protected activity; (2) his employer took an adverse employment action at the time of, or subsequent to, the protected activity; and (3) causation between the protected activity and the

---

[9] Even if Plaintiff met this burden, the Army has articulated legitimate, nondiscriminatory reasons for its actions.  Dyer requested proof of Plaintiff's reimbursement requests based on his knowledge of cab fares in D.C., and, before suspending Plaintiff, he confirmed with the D.C. taxi commission that Plaintiff's receipts were unreasonable.  (*See* Pl.'s Br., Ex. 47.)  Dyer's comments on the DOL form were based on Dyer's understanding that Plaintiff's work duties had not changed and that there was no agreement that Plaintiff would fly first class.  (*See id.* at Ex. 56.)  Finally, Plaintiff was legitimately terminated because he was deemed permanently disabled.  Under these circumstances, these are all non-rebuttable, legitimate, nondiscriminatory reasons.

employment action. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (citation omitted). As in a disability discrimination case, the presumption of discrimination is rebutted if the employer articulates a legitimate, non-retaliatory reason for its actions, which shifts the burden back to the plaintiff to prove pretext. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–501 (3d Cir. 1997). The anti-retaliation provision of Title VII protects "those who participate in certain Title VII activities . . . and those who oppose discrimination made unlawful by Title VII." *Ferra v. Potter*, 324 Fed. App'x. 189, 192 (3d Cir. 2009). Additionally, a plaintiff is required to prove that the alleged retaliatory action "would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Sante Fe Railway Co. v. White*, 548 U.S. 53, 54 (2006). To prove causation, Plaintiff must show (1) an unusually suggestive temporal proximity between the protected activity and the retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Burger v. Sec'y of Revenue*, 575 F. App'x 65, 68 (3d Cir. 2014).

> **a. *April 2006 Train ride***

This Court finds that with respect to the 2006 train ride, Plaintiff did not engage in protected activity. Rather, he attempted to enforce the NSA in order to fly first class, which does not constitute a protected activity. *See* 42 U.S.C. § 2000e; *see also Patterson v. Spellings*, 249 F. App'x 993, 995–96 (5th Cir. 2007) (finding that the district court lacked subject matter jurisdiction because the plaintiff's claim for breach of the EEO settlement agreement was a contract claim and not a discrimination claim). Notwithstanding the lack of protected activity, this Court finds that there was no adverse action. It suffices that the train reasonably accommodated Plaintiff's known medical limitation of needing to stretch his legs every hour. *See Garner v. School Dist. of Phil.*, No. 13-2756, 2014 WL 5410070, *13 (E.D. Pa. Oct. 24, 2014) (holding that a claim based entirely

on a failure-to-accommodate claim fails as a matter of law because it cannot be brought as a separate claim).

**b.  *Travel reimbursement and DOL form comments***

For the reasons stated in Part III of this Opinion, this Court finds that Plaintiff's travel reimbursement and DOL form claims were not "materially adverse" actions.

**c.  *Suspension claim***

Where a federal employee is employed pursuant to a CBA that allows him to raise discrimination claims through a union grievance procedure, he must "make an election to pursue h[is] 'matter' through either the statutory procedure or the negotiated grievance procedure, 'but not both.'"  *Facha v. Cisneros*, 914 F. Supp. 1142, 1148 (E.D. Pa. 1996) (citing *Vinieratos v. United States*, 939 F.2d 762, 768 (9th Cir. 1991)).  An employee's election is irrevocable and is effective on the first filing of either an EEO complaint or a union grievance.  *Vinieratos*, 939 F.2d at 768.  Plaintiff chose to pursue his suspension claims through the union grievance process. (Def.'s Br., Ex. 54.)  As such, Plaintiff is barred from pursing his suspension claims in this Court.

**d.  *Plaintiff's termination***

Plaintiff alleges a scheduling order mailed to all parties constitutes protected activity because it showed Plaintiff was actively litigating his EEO complaint.  (Pl.'s Opp. 54.)  The scheduling order was mailed on January 26, 2012 and Defendant proposed terminating Plaintiff on February 2, 2012.  (*See id.*)  There is no basis to conclude the scheduling order is evidence of a protected activity.  Furthermore, the causal link between the mailing of the scheduling order and Plaintiff's termination on July 14, 2012 is missing, especially in light of the fact that Plaintiff had already been out of work for two years at the time of his removal.  Moreover, Defendant had a

legitimate reason for terminating Plaintiff, as Plaintiff was deemed totally disabled by that time.

Hence, Plaintiff's retaliation claim fails.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.  An Order consistent with this Opinion follows.

s/ Susan D. Wigenton, U.S.D.J.

Orig:        Clerk
cc:          Parties
             Magistrate Judge Steven C. Mannion